[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This limited contested action dissolution of marriage was commenced by writ dated June 14, 2001. The parties were married on December 31, 1998 in Madison, Connecticut. One party has resided in this state for a period of at least one year prior to bringing this action. There are no minor children issue of the marriage and neither party has been the recipient of public assistance. The marriage between the parties has broken down irretrievably without prospect for reconciliation.
The plaintiff husband is fifty-one years of age, in good health, and he has a B.A. degree. This is his first marriage. He is self-employed in the field of advertising and his speciality is business-to-business advertising for safety equipment.
The name of the plaintiff's business is H.T. Associates and it operates under the name of Muir Advertising. The plaintiff states on his financial affidavit that he has gross weekly earnings of $673 and net weekly earnings of $658 from the business. The business lost $1,315 in 1999 and $21,322 in 2000. The business did have a profit of $34,593 in 2001. To cover its expenses during these three years, the plaintiff lent money to the business. The money for these loans to the business came from money lent to the plaintiff from his sister, Margaret Muir. The plaintiff's sister has lent him approximately $150,000 over the last three years. These loans are the subject of a third-party complaint brought by the defendant against Margaret Muir which will be addressed later.
After considering the evidence the court finds the income amounts stated in the plaintiff's financial affidavit to be credible. The only liquid assets owned by the plaintiff is $54 in two bank accounts.
The defendant wife is a Russian citizen; she is forty years old and in good health. This is her second marriage; she has a son who is now twenty. The defendant obtained a degree in engineering in Russia and she recently was awarded an MBA degree from the University of New Haven. At the time she came to the United States in 1998, she was employed as a managing director of a twenty-five store shopping mall in Samara, CT Page 8435 Russia. At that job, the defendant earned 500 rubles a month which, she testified, is a middle-class salary in Russia. The defendant resigned this position in 1999 after she married the plaintiff. The Defendant owns a vacant apartment in Samara, Russia, which she testified is worth $15,000.
When the defendant first came to this country she spoke very little English. Soon after she arrived, she attended an intensive English language course for six months. She has made remarkable progress in learning English and she now speaks it quasi-fluently. She is presently employed as a part-time assistant manager at Warnaco where she works twenty-five hours a week earning $12 an hour. Her net wages are $229 a week. The defendant is also an excellent seamstress and she presently earns $30 a week from that vocation. The defendant has liquid assets of $35.
The defendant testified there is no restriction on her ability to return to Russia; however, she wishes to remain in this country. The defendant is intelligent and motivated; she achieved a 3.9 GPA in her MBA studies. The defendant believes she has the capacity to earn $45,000 per year. The court notes, the defendant is working only part-time and she has chosen to wait until the conclusion of this action before she begins an active job search. The court finds the defendant's estimate of her earning capacity to be reasonable.
The plaintiff contracted to purchase a house located at 11 Pent Road, Madison, prior to the marriage; the closing occurred after the marriage. The house was purchased for $218,000 with a mortgage of $135,000. The house is titled in the plaintiff's name alone. All of the down payment for the house came from an inheritance the plaintiff had previously received. The defendant did not contribute to the purchase of the home and the mortgage is in the plaintiff's name alone. Renovations were done to a guest house on the property. The defendant and her son performed some work for the renovations; however, the court concludes it was not a significant amount of work.
The house is presently for sale and the plaintiff has valued the home at $400,000. It is now encumbered by mortgages in the amount of $200,000 and it is also cumbered by an attachment in favor of the plaintiff's sister in the amount of $130,000.
In formulating its orders the court has carefully considered provisions of General Statutes § 46b-81, regarding assignment of property, § 46b-82, regarding alimony, and § 46b-62, regarding attorney's fees. The court is also mindful of language in the case of Lord v. Lord,44 Conn. App. 370, 377 (1997) wherein the court stated: "We have often CT Page 8436 stated that the power to act equitably is the keystone of the court's ability to fashion relief in the infinite variety of circumstances that arise out of the dissolution of a marriage. (Citations omitted.) These equitable powers give the court the authority to consider all the circumstances that may be appropriate for a just and equitable resolution of the marital dispute."
The plaintiff is a Russophile who sought to embrace the culture by having a Russian companion. He sought out such a companion on the internet. The defendant wanted to meet men who were not from Russia and she sought to leave Russia because of the lack of opportunity. The defendant's picture and her personal information came to be on the internet where the plaintiff found it. The plaintiff wrote to the defendant and he visited her on two occasions in Russia. It was agreed that the defendant would come to the United States.
The defendant came to the United States on a fiance visa, without her son, in November 1998. The visa was for ninety days. If the defendant wanted to leave and return to the United States, she would have to marry the plaintiff while on the visa. The parties were married on December 31, 1998.
Both parties testified they did not love each other at the time they married. When they married, both parties did have strong feelings of affection for the other and they both hoped these feelings would ripen into love; unfortunately they did not.
It appears that the first two months of the marriage were the only happy ones. Thereafter, the defendant returned to Russia for approximately three months. When she returned, she was accompanied by her son. The defendant's son did not have an easy adjustment to the United States and this placed a strain on the young and fragile relationship of the parties. In September 1999 the defendant traveled to Russia and returned in November with her mother. Her mother lived with the parties until approximately April/May 2000. The defendant again went to Russia in April/May 2000. The testimony from the parties as to the dates-and duration of the defendant's trips to Russia was conflicting; however, the court finds the defendant spent at least five of the first eighteen months of the marriage in Russia.
By July 2000, both parties came to the realization that love would not develop in their marriage. Neither party wanted to separate because both were concerned about the effects a divorce or separation would have upon the defendant's immigration status. The parties began to live separate lives and communications between them became strained. This situation, coupled with financial pressures, made for a difficult living environment CT Page 8437 and brought about the filing of this action. The plaintiff, the defendant, and her son, continue to reside together.
Both parties share equal responsibility for the breakdown of this marriage so it is not appropriate to assess fault. The court does find that the parties entered into the marriage for legitimate purposes, with hope and a desire that it would succeed. The evidence does not show any intent by either party to circumvent the immigration laws of the United States. The plaintiff has sponsored the defendant for resident alien status by executing an Affidavit of Support, Form 1-864. The plaintiff's contractual obligations under that Affidavit of Support are unaffected by this judgment.
In determining its orders, the court must consider the special circumstances of this case. The husband paid approximately $10,000 for the defendant's intensive English course. In addition, he gave $3,000 to the defendant in April 2000 which she used for her son's benefit. The defendant also paid for numerous airline tickets to and from Russia which were used by the defendant, her son, and her mother. He contributed approximately $500 to the defendant's graduate school tuition. The plaintiff provided, and paid the charges on, a charge card which the defendant used extensively. The plaintiff rented a vehicle for the defendant's use.
In considering the assignment of property, the court notes the relatively short length of this marriage and the even shorter period of its potential viability. Although the defendant did give the plaintiff $3,000 she earned from her work as a seamstress, this contribution is far outweighed by expenditures, not of a necessary nature, made by the plaintiff on her behalf. The court has also considered the source of the money that the plaintiff used to purchase the Pent Road property. The court concludes it is fair and equitable for the parties to retain the assets shown on their respective financial affidavits without any assignment to the other.
In the consideration of alimony, the length of the marriage is also important. Having considered the other statutory criteria, the court cannot conclude that there is a continuing duty for the plaintiff to support the defendant. The fact the defendant, a Russian citizen, has come to live in the United States as a consequence of the marriage is a circumstance for the court to consider. The court finds that the plaintiff's desire to marry a woman from Russia was equal to the defendant's desire to come to the United States and marry a man from this country. The defendant could return to Russia and resume the middle class life she left, however, she desires to stay in the United States. The defendant's choice to stay in this country does not create an obligation CT Page 8438 for the plaintiff to pay periodic alimony.
To facilitate a separation of the parties, the court concludes it is fair and equitable for the plaintiff to provide financial assistance to the defendant in the form of lump sum alimony. This lump sum alimony will assist the defendant in obtaining a residence of her own and a vehicle. In his proposed orders, and in argument, the plaintiff indicated an ability to borrow additional funds from his sister. The plaintiff is to pay $10,000 to the defendant as lump sum alimony, $5,000 within twenty-one days from the date of this judgment and $5,000 upon the defendant vacating the marital home. The defendant is to vacate the marital home no later than thirty days from the date of judgment.
The court has considered the issue of counsel fees and declines to enter an award for either party.
The defendant has filed a third party action against the plaintiff's sister, Margaret Muir. The essential claim in this action is that the attachment placed upon the plaintiff's real estate by Margaret Muir is in actuality a fraudulent conveyance of the equity in the property. The court concludes that the third party defendant, Margaret Muir, did make loans to the plaintiff which total in excess of $150,000. The loans are in the form of checks given by the third party defendant to the plaintiff for payment of business and household expenses. There are numerous checks and many are written on the same date. The court finds the manner of making these loans peculiar, however, the transactions are not fraudulent. There is a logical and credible connection between the drastic downturn in the plaintiffs business and his need for funds to cover his escalating expenses for support of the defendant, her son and mother. Furthermore, beginning in early 1999 the plaintiff had substantial expenses for the recently acquired Pent Road property. The defendant, third party plaintiff, has failed to meet her burden in proving a fraudulent conveyance.
 ORDERS
1. The marriage of the parties is dissolved on the grounds of irretrievable breakdown.
2. The plaintiff shall pay lump sum alimony to the defendant in the amount of $10,000 as follows: $5,000 within twenty-one days after the date of judgment and $5,000 at the time the defendant vacates 11 Pent Road, Madison, Connecticut.
3. The defendant is to vacate 11 Pent Road, Madison, Connecticut no later than thirty days from the date of judgment. CT Page 8439
4. The plaintiff shall continue to provide a rental car for the defendant's use and shall keep her covered on his car insurance as long as she resides at 11 Pent Road, but no longer than thirty days from the date of judgment.
5. lf the parties are unable to agree on a division of their personal property the matter is referred to Family Relations for mediation. The court retains jurisdiction in the event a meditation is unsuccessful.
6. Each party shall be responsible for the liabilities shown on their respective financial affidavits and shall hold the other harmless from any liability thereon.
7. Each party is to retain the assets shown on their respective financial affidavits.
8. Each party shall be responsible for their respective counsel fees.
9. The defendant is restored her maiden name of Irma Kouznetsova.
10. Judgment is entered in favor of the third party defendant, Margaret Muir, on all counts of the third party complaint.
 ___________________ Domnarski, J.